UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>   100 F Street, N.E.<br>   Washington, D.C. 20549<br>                              Plaintiff,<br><br>   v.<br><br>SEDONA SOFTWARE SOLUTIONS, INC.<br><br>AND<br><br>JOHN E. COOPER,<br><br>                              Defendants. | C.A. No. _____<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## NATURE OF THE ACTION

1.  This action involves violations of the registration provisions of the Securities Act of 1933 ("Securities Act") and the reporting provisions of the Securities Exchange Act of 1934 ("Exchange Act") by defendant Sedona Software Solutions, Inc. ("Sedona") and its former chairman, chief executive officer, and controlling shareholder, defendant John E. (Jack) Cooper ("Cooper"). The violations took place in 2003, when Cooper arranged the sale of 5.34 million Sedona shares, representing ninety-nine percent of Sedona's total shares outstanding, to two principals (the "Bermuda principals") of a Bermuda investment banking and brokerage firm (the "Bermuda firm"). All of the 5.34 million Sedona shares that Cooper sold were restricted, and no

registration statement was in effect as to the transaction. The Bermuda principals then directly or indirectly sold 159,300 of those restricted Sedona shares into the U.S. public markets on the OTC Bulletin Board ("OTCBB") from January 21 through January 27, 2003, without a valid registration statement in effect, and without any valid exemptions from registration. The Commission suspended trading in Sedona stock on January 30, 2003.

2. Sedona failed to file current reports on Form 8-K with the Commission to disclose the change in control from Cooper to the Bermuda principals that occurred on or about January 3, 2003. As chairman and chief executive officer of Sedona, Cooper aided and abetted Sedona's reporting violation. Cooper also failed to file an amended Schedule 13D with the Commission to report his sale of Sedona stock to the Bermuda principals, failed to file a Form 4 with the Commission to report the change in beneficial ownership of his Sedona shares, and failed to file an annual report of his Sedona holdings on Form 5 with the Commission.

3. By virtue of its conduct, defendant Sedona directly or indirectly violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act and Rule 13a-11 thereunder [15 U.S.C. §§ 78m(a); 17 C.F.R. §§ 240.13a-11].

4. By virtue of his conduct, defendant Cooper directly or indirectly violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]; and Sections 13(d) and Section 16(a) of the Exchange Act and Rules 13d-2, 16a-2, and 16a-3 thereunder [15 U.S.C. §§ 78m(d) and 78p(a); 17 C.F.R. §§ 240.13a-11, 240.13d-2, 240.16a-2, and 240.16a-3]. In addition, defendant Cooper aided and abetted Sedona's violations of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. § 240.13a-11].

## JURISDICTION

5. This Court has jurisdiction of this action pursuant to Sections 20 and 22(a) of the Securities Act [15 U.S.C. §§ 77t and 77v(a)], and Sections 20, 21(d), and 27 of the Exchange Act [15 U.S.C. §§ 78t, 78u(d), and 78aa].

6. Defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANTS

7. **Sedona Software Solutions, Inc.** was at all relevant times a Nevada corporation based in Vancouver, British Columbia, which had no operations and nominal assets. Sedona's stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act, and was traded and quoted on the OTCBB under the ticker symbol "SSSI." On January 29, 2003, the Commission suspended trading in Sedona securities for ten days. On June 30, 2006, Sedona filed a Form 15 with the Commission to terminate its Exchange Act Section 12(g) registration.

8. **John E. Cooper**, age 68, is a Canadian citizen residing in Vancouver, British Columbia. During the relevant period, Cooper was the chairman and chief executive officer of Sedona.

## FACTUAL ALLEGATIONS

9. Defendant Cooper formed Sedona in 1999, and served as Sedona's chairman and chief executive officer, while his two sons served as Sedona's directors. Cooper was Sedona's sole officer, and he and his sons were Sedona's sole directors.

10. Cooper and his sons owned four million restricted Sedona shares. Shortly after Sedona's inception, forty-three friends, associates, and relatives of Cooper received approximately 1.34 million Sedona shares in one or more private placements. Together, Cooper, his sons, and his friends, associates, and other relatives owned approximately 5.34 million shares of Sedona, which represented over ninety-nine percent of Sedona's total shares outstanding.

11. Prior to November 2002, in order to facilitate the sale of Sedona to a third party, Cooper instructed Sedona's U.S. transfer agent to consolidate the share certificates representing 1.34 million shares that were held by his forty-three friends, associates, and relatives. At Cooper's direction, the transfer agent consolidated the 1.34 million Sedona shares from forty-three share certificates into twelve share certificates, and those twelve share certificates were then issued in the names of seven friends, relatives, or associates of Cooper (the "Seven Shareholders"). By November 2002, all of the Seven Shareholders had given Cooper possession of their share certificates, along with signed stock powers, granting him permission to transfer their shares in a sale to a third party.

12. In or around mid-December 2002, Cooper began negotiations with one of the Bermuda principals ("Bermuda Principal No. 1") to sell Sedona. Cooper and Bermuda Principal No. 1 reached an agreement whereby Cooper would sell 5.34 million shares of Sedona stock (over ninety-nine percent of Sedona's total shares) to the Bermuda principals for a total purchase price of approximately $380,000.

13. Cooper negotiated the sale of the 5.34 million Sedona shares (hereinafter, the "Sedona Shares"), to the Bermuda principals on behalf of all of Sedona's selling shareholders (himself, his sons, and the Seven Shareholders). Cooper arranged for the preparation of all of the share transfer documentation, negotiated the price for the Sedona Shares, and made all of the

payment arrangements. Cooper also determined how much money he and his sons would receive from the approximately $380,000 purchase price, and how much money each of the Seven Shareholders would receive. To effectuate the sale of the Sedona Shares, Cooper instructed the Seven Shareholders to sign share purchase agreements transferring their collective 1.34 million shares to nominees used by the Bermuda principals, each in exchange for a small payment. As part of the same transaction, Cooper also arranged for the sale of the four million Sedona shares from himself and his sons to the Bermuda principals.

14.  At all relevant times, Cooper was a control person of Sedona because he was its sole officer, its chief executive officer, its chairman, and he and his sons owned the majority of Sedona's outstanding shares. This also made Cooper an affiliate of Sedona. The Seven Shareholders were also affiliates of Sedona because Cooper exercised control over their shares, and over their decision-making regarding their shares. Cooper's sons were also affiliates because Cooper exercised control over them and their shares, and they, along with Cooper, owned the majority of Sedona's outstanding shares.

15.  Although Cooper and the Bermuda principals treated the 1.34 million shares from the Seven Shareholders as unrestricted or "free-trading" shares, those shares were in fact restricted, because the Seven Shareholders were affiliates of Sedona, as described above, and Cooper sold those 1.34 million shares, along with the four million Sedona shares owned by Cooper and his sons, to the Bermuda principals in a single unregistered transaction.

16.  On or about January 3, 2003, the transaction to sell the Sedona Shares closed, and the Bermuda principals committed to pay the approximately $380,000 purchase price. Also on or about January 3, 2003, Cooper personally hand-delivered the share certificates representing the 1.34 million Sedona shares to the Bermuda principals' attorneys in Vancouver, British

Columbia, to be held by the law firm in escrow until full payment had been received from the Bermuda principals. Also at that time, Cooper retained one of the twelve share certificates for 245,000 shares ("Certificate A"), rather than giving it to the law firm to be held in escrow. On or about January 10, Cooper had the four million shares held by him and his sons delivered by mail to Bermuda principal No. 1 at his Bermuda firm.

17. On or about January 13, 2003, Cooper sent Certificate A directly to Bermuda Principal No. 1 at his Bermuda firm by overnight courier. Certificate A did not bear a restricted legend. The Bermuda principals received Certificate A on or around January 14, 2003, and on that day, Bermuda principal No. 1 instructed certain Bermuda firm employees to credit the Certificate A shares immediately to an account at the Bermuda firm that was jointly owned and controlled by the Bermuda principals ("the Bermuda Joint Account"). Bermuda principal No. 1 then instructed the Bermuda firm employees to immediately send Certificate A to the Bermuda firm's U.S. transfer agent, to be deposited into the Depository Trust and Clearing Corporation ("DTC"). DTC is a central securities repository for U.S. brokerage firms, and is used to settle securities transactions.

18. By January 16, 2003, the Bermuda principals had fully paid for the Sedona Shares, and by January 23, they had received the remaining 1.095 million Sedona shares from Cooper.

19. On January 21, 2003, the Bermuda principals began selling Sedona shares from the Bermuda Joint Account over the OTCBB, and continued selling Sedona shares from that account through January 27, 2003. By the end of the day on January 27, the Bermuda principals had sold or caused the sale of a total of 159,300 Sedona shares over the OTCBB, reaping profits of over $1.5 million. No registration statement was in effect as to these sales. All of the shares sold from the Bermuda Joint Account originated from the Certificate A shares that had earlier been

deposited into DTC. On January 30, the Commission suspended trading in Sedona stock for ten days due to concerns about the accuracy of information that was being publicly disseminated at the time regarding Sedona's proposed merger with a private mining company, Renaissance Mining Corporation.

20. The Bermuda principals engaged in an illegal distribution of Sedona shares into the U.S. markets, directly and indirectly, when they sold 159,300 restricted Sedona shares on the U.S. public markets on January 21 and thereafter without a registration statement in effect. Cooper's initial sale of the Sedona shares to the Bermuda principals was a necessary part of the illegal distribution of these Sedona shares on the U.S public markets.

21. Following the close of the sale of the Sedona Shares to the Bermuda principals on or about January 3, 2003, Sedona failed to file a Form 8-K with the Commission to disclose the Bermuda principals' acquisition of majority control of Sedona. Cooper aided and abetted Sedona's failure to file the Form 8-K.

22. Cooper also failed to file an amended Schedule 13D with the Commission to publicly disclose that, as part of a single transaction to sell the Sedona Shares, Cooper had sold shares of Sedona stock. Cooper also failed to file a Form 4 with the Commission to report the change in beneficial ownership of his Sedona shares, and failed to file an annual report of his Sedona holdings on Form 5 with the Commission.

### CLAIM ONE
### Violations of Section 5 of the Securities Act
### [15 U.S.C. §§ 77e(a) and 77e(c)]

23. Paragraphs 1 through 22 are hereby realleged and incorporated by reference.

24. Defendant Cooper, by engaging in the conduct described above, directly or indirectly, and without a registration statement in effect as to Sedona securities:

    a. Made use of the means or instrument of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise;

    b. Carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale; and

    c. Made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise securities, without a registration statement having been filed as to those securities.

25. By reason of the foregoing, defendant Cooper violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## CLAIM TWO
**Violations of Section 13(a) of the Exchange Act
and Rule 13a-11 Thereunder
[15 U.S.C. § 78m(a); 17 C.F.R. § 240.13a-11]**

26. Paragraphs 1 through 22 are hereby realleged and incorporated by reference.

27. Defendant Sedona, by engaging in the conduct described above, failed to file with the SEC current reports on Form 8-K.

28. By reason of the foregoing, defendant Sedona violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act and Rule 13a-11 thereunder [15 U.S.C. § 78m(a); 17 C.F.R. § 240.13a-11].

## CLAIM THREE
### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rule 13a-11 Thereunder
### [15 U.S.C § 78m(a); 17 C.F.R. § 240.13a-11]

29. Paragraphs 1 through 22 are hereby realleged and incorporated by reference.

30. Defendant Cooper, by engaging in the conduct described above, knowingly provided substantial assistance to Sedona's violation of the periodic reporting provisions of the Exchange Act.

31. By reason of the foregoing, defendant Cooper aided and abetted, and unless restrained and enjoined will continue to aid and abet, Sedona's violation of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder [15 U.S.C § 78m(a); 17 C.F.R. § 240.13a-11].

## CLAIM FOUR
### Violations of Section 13(d) of the Exchange Act and Rule 13d-2 Thereunder
### [15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-2]

32. Paragraphs 1 through 22 are hereby realleged and incorporated by reference.

33. Defendant Cooper, by engaging in the conduct described above, failed to file an amendment to Schedule 13D reporting a material change to his previously-filed Schedule 13D, including, but not limited to, failing to report a material decrease in the percentage of the class of Sedona securities he beneficially owned.

34. By reason of the foregoing, defendant Cooper violated, and unless restrained and enjoined will continue to violate, Section 13(d) of the Exchange Act and Rule 13d-2 thereunder [15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-2].

## CLAIM FIVE
### Violations of Section 16(a) of the Exchange Act and Rule 16a-3 Thereunder
### [15 U.S.C. § 78p(a); 17 C.F.R. § 240.16a-3]

35. Paragraphs 1 through 22 are hereby realleged and incorporated by reference.

36. Defendant Cooper, by engaging in the conduct described above, failed to file a Form 4 with the Commission reporting a change in beneficial ownership of Sedona securities, and failed to file an annual statement of beneficial ownership of Sedona securities on Form 5 with the Commission.

37. By reason of the foregoing, defendant Cooper violated, and unless restrained and enjoined will continue to violate, Section 16(a) of the Exchange Act and Rule 16a-3 thereunder [15 U.S.C. § 78p(a); 17 C.F.R. § 240.16a-3].

**WHEREFORE,** Plaintiff Securities and Exchange Commission requests that the Court:

i. Enjoin defendant Cooper from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act; Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-2 and 16a-3 thereunder, and from aiding and abetting violations of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder;

ii. Enjoin defendant Sedona from violating, directly or indirectly, Section 13(a) of the Exchange Act and Rule 13a-11 thereunder;

iii. Order defendant Cooper to pay civil penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act; and

iv. Grant such other relief as this Court may deem just and proper.

Dated: December 19, 2007

Respectfully submitted,

*/s/ David Williams*

David Williams (California Bar #183854)
Antonia Chion
Yuri B. Zelinsky
Michael A. Ungar
Ivonia K. Slade
Scott F. Weisman

Attorneys for Plaintiff

SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20549
Tel: 202-551-4548 (Williams)
Fax: 202-772-9362
Email: williamsdav@sec.gov

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS<br>Securities and Exchange Commission | DEFENDANTS<br>John E. Cooper and Sedona Software Solutions, Inc. |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Vancouver, BC, Canada<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRAC |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>David Williams, Esq.<br>100 F Street, NE<br>Washington, D.C. 20549-4010<br>(202) 551-4548 | ATTORNEYS<br>Case: 1:07-cv-02269<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 12/19/2007<br>Description: General Civil |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☒ E. *General Civil (Other)* OR  ☐ F. *Pro Se General Civil*

| Real Property<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>Personal Property<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | Bankruptcy<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>Prisoner Petitions<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>Property Rights<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>Federal Tax Suits<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | Forfeiture/Penalty<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>Other Statutes<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. Sections 78m(a) and (d), 78p(a). SEC seeks injunctive relief and penalties based on violations of SEC reporting requirements.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $    Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE Dec. 19, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.